[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY INJUNCTION
The plaintiff Type House, Inc. seeks a temporary injunction to restrain its former employee Kevin Corbett, the defendant, from contacting and diverting business of plaintiff's customers to a business now run by the defendant. The plaintiff bases its claim on a written contract of employment that the plaintiff and defendant executed when the defendant was hired by Type House as a member of its sales force in June 1999. The written contract is a comprehensive one. It was for an initial duration of fourteen months. It included the terms of the defendant's compensation, including a salary, commission, and bonus package; provisions for vacation and personal leave; and procedures relating to termination. It also included the following paragraph, entitled "Restrictive Covenant:"
 10.c. The Employee will not, for a period of two (2) years after the termination of employment and/or termination or expiration of this Agreement, whichever occurs last, directly or indirectly, as stockholder of a corporation, partner, proprietor, owner, agent, undisclosed principal, employee, independent contractor, broker, sale representative, advisor, consultant, office of [sic] in any other capacity, solicit, accept, perform, procure, provide or divert the business or patronage of any customer of Employer who was a customer of Employer either during the term of this Agreement or at the termination of said Agreement.
The plaintiff is a commercial printing business that has specialized in prepress services. Among the reasons that defendant was an attractive addition to plaintiff's sales force was his background in the printing end of the business. The plaintiff hoped that the defendant would be able to develop a greater volume of printing sales. The defendant performed well for the plaintiff.
Then, on February 28, 2000, he resigned to pursue his own printing business. Within a day, defendant was in contact with a major customer of the plaintiff in an attempt to divert business from the plaintiff to the defendant.
The court began this hearing on May 1, 2000. Thereafter the court adjourned the matter to allow the parties time to resolve some or all of this dispute through mediation. Mediation was partly successful. The parties were able to agree on a list of customers that the plaintiff did not object to the defendant contacting. The parties were not able to agree on the status of the defendant's most fruitful contact: Ames CT Page 8522 Department Stores.
The court resumed hearing evidence on July 10, 2000, on the validity of the noncompetition clause and on the status of Ames.
The court, having considered all of the evidence, finds that the non-competition clause of the written employment contract between the plaintiff and defendant is valid and enforceable. See, Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525 (1988). As to the defendant's contact with Ames Department Store, the court finds that Ames was a customer of the plaintiff for both prepress and printing services prior to the defendant's departure from employment in February. Further, the defendant contacted Ames and successfully solicited its printing business from Ames almost immediately after leaving Type House. The fact that the defendant had done some business with Ames years before he joined Type House as an employee is irrelevant to whether he is bound by the terms of his employment contract.
That contract places the defendant on notice of the likely consequences of a breach of the restrictive covenant. Paragraph 12 specifies:
 It is acknowledged that it will be impossible to measure in money the damage that will be suffered by the Employer in the event that Employee fails to comply with any of the covenants and restrictions set forth in Paragraphs 10 and 11 of this agreement, and that in such event the Employer will not have an adequate remedy at law. It is, therefore, agreed to by the Employee that the Employer in such event shall be entitled to injunctive relief, both temporary and permanent, to enforce such covenant or restriction, or any of them, in any court having jurisdiction thereof, in addition to such other equitable and legal remedies which may be available to it, and in the event that any action or actions should be instituted in equity to enforce any restriction or covenant hereunder, no party will raise the defense that there is an adequate remedy at law.
The court is aware that it may nonetheless "consider and balance the injury complained of with that which will result from interference by injunction. . . ." Moore v. Serafin, 163 Conn. 1, 6 (1972); Anderson v.Latimer Point Management Corporation, 208 Conn. 256, 262-63 (1988). In considering all of the evidence, the court finds that an injunction should issue that has the effect of requiring the defendant to live up to the terms of his contract. The defendant built up a productive CT Page 8523 relationship with a customer of the plaintiff in the few months that defendant worked for plaintiff. The court finds that the defendant left the plaintiff's employment with the intention to take that customer with him, in violation of the express terms of the employment contract. Under those circumstances, the defendant cannot expect the plaintiff or indeed the court to countenance such conduct by claiming that he "needs" to keep the customer he stole because it is his major source of business.
The court is unpersuaded by the claims of the defendant. The court grants the request of the plaintiff for the issuance of a temporary injunction enforcing the terms of paragraph 10.c. of the Employment Agreement against the defendant with respect to the Ames Department Store account. Counsel for the plaintiff shall draft an appropriate order for the court's signature and confer with counsel for defendant as to form.
Patty Jenkins Pittman, Judge